BENTON, Judge.
Since this case’s original appearance here, State v. Florida Police Benevolent Association, 580 So.2d 619 (Fla. 1st DCA 1991), it has been to our supreme court, which “remanded to the trial court for further proceedings.” State v. Florida Police Benevolent Association Inc., 613 So.2d 415, 421 (Fla.1992). The State of Florida now appeals the trial court’s order on remand. We affirm. The order on remand speaks eloquently for itself:

BACKGROUND

1. This matter is before the court on remand from the Florida Supreme Court. See, State v. Florida Police Benevolent Association Inc., et al., 613 So.2d 415 (Fla.1992). The underlying facts and history of the case w[ere] succinctly summarized by the Florida Supreme Court, 613 So.2d at 416:
In 1988, the legislature enacted its general appropriations act. Ch. 88-555, Laws of Fla. Section 9.3.A(5) of the act contained proviso language that altered the leave policy for career service employees, and thus the leave awards for which the unions had bargained. Under the proviso, annual leave was decreased from 17.333 hours per month to thirteen hours per month. Sick leave was increased from four hours and twenty minutes per month to eight hours per month. All accumulated annual leave in excess of 240 hours was canceled, thus eliminating the cash-payment and sick-leave conversion options. Finally, the requirement of obtaining a written verification of illness for employees claiming sick leave was eliminated. This last measure apparently was aimed at preventing employees from being paid for time off necessary to visit the doctor to obtain the written verification.
The unions contend that the legislature’s actions abridged their right to collectively bargain, which is guaranteed by the Florida Constitution. Both the trial court and the district court of appeal agreed. The trial court granted summary judgment in favor of the unions, and the district court of appeal affirmed the judgment, finding section 9.3.A(5) of the Appropriations Act to be invalid under article I, section 6.
2. After reviewing the matter, the case was remanded to this court because “[tjhere is currently no record evidence on the issue of whether the negotiated benefits could be fully funded by the money already allocated by the legislature.” 613 So.2d at 421. This court’s instructions were clear, 613 So.2d at 421:
Therefore, the trial court must determine whether the legislative appropriation was sufficient to fund the annual and sick leave provisions of the collective bargaining agreement. If it was, these provisions of the collective bargaining agreement must be enforced. If these provisions were underfunded, the legislative determination shall control.

*1126
FINDINGS OF FACT

3. The record evidence in this matter establishes the following undisputed facts relative to the issues before the court:
a. The Florida Legislature does not, and did not, at times material herein, separately appropriate money for the funding of annual and sick leave benefits for career service employees. The funding of such benefits is not a separate appropriations issue subject to specific action by legislature.... Such a benefit is an inherent part of the employees’ employment benefit package.
b. The Florida Legislature’s expression of intent to return annual and sick leave benefits to the 1986 levels as found in Section 9.3.A(5) of Chapter 88-555, Laws of Florida, is a statement by the legislature which the governor implemented.
c. The facts demonstrate the legislative appropriations w[ere] sufficient to fund the annual and sick leave benefits of the collective bargaining agreement as negotiated.

ANALYSIS

4. In order to accommodate both the public employees’ right to collectively bargain and the legislature’s exclusive control over the public purse, the Florida Supreme Court formulated the following evaluation to be applied in this type of situation, 613 So.2d at 421:
Where the legislature provides enough money to implement the benefit as negotiated, but attempts to unilaterally change the benefit, the changes will not be upheld, and the negotiated benefit will be enforced. This result would not impede upon the legislature’s exclusive power over public funds, because the funds would already be there to enforce the benefit. Where the legislature does not appropriate enough money to fund a negotiated benefit, as it is free to do, then the conditions it imposes on the use of the funds will stand even if contradictory to the negotiated agreement.
5. The Court finds the facts in the present case fall clearly within the first category of conduct contemplated by the Florida Supreme Court’s evaluation.
6.Thus, the unilateral change in the annual and sick leave benefits of the career service employees represented by plaintiffs cannot be upheld and the leave benefits as negotiated must be enforced.
THEREFORE THE COURT DENIES the defendants’ motion for summary judgment and GRANTS the plaintiffs’ motion for summary judgment.
Neither party contends that material facts remain in dispute or that summary judgment is in any other way proeedurally inappropriate. The State’s arguments that the summary judgment is wrong as a matter of substantive law are foreclosed by the law of the case.
AFFIRMED.
ERVIN and MINER, JJ., concur.